No. 13,503.

FREDERICO L. SOLANAS VS. MRS ELISE B. LUPIN.

SYLLABUS.

Where, in an action for damages for injuries resulting from an assault committed by a woman upon a man who had been her paramour, and who, whilst occupying those relations, had eloped with her minor daughter, it appears that he had thereafter induced her to assume, upon occasions, her former relations with him, assuring her that his suit for damages would be dismissed, the offence committed by the woman will be held to have been con doned in so far as concerns such action, and the same will be dismissed.

APPEAL from the Civil District Court, Parish of Orleans— *Theard, J.*

*Arthur J. Peters* for Plaintiff, Appellant.

*Albert Voorhies* for Defendant, Appellee.

The opinion of the Court was delivered by

MONROE, J. This is an action in damages for personal injuries. The plaintiff alleges that he was passing along a public street, on his way to his business, when he was attacked by the defendant, who had been lying in wait for him, and who fired upon him with a pistol; that, by the first shot, he was struck in the shoulder, and fell to the ground, and that the defendant fired twice more, striking him in the wrist and hip, and that she would have continued the attack and would, probably, have killed him, but for the interference of third persons. He alleges that he has been damaged to the extent of $1000 by reason of loss of time and position, expenses, etc., resulting from, and necessitated by, his injuries. And he claims the further sum of $4000 as exemplary damages. The defendant pleads the general denial.

The evidence in the record sustains the averments of the petition as to the circumstances of the attack upon the plaintiff; but makes it plain that he grossly exaggerated the extent of his injuries and damage. He received no wound, whatever, in the hip, and the wound in the shoulder

is characterized as a "scratch" by the attending physician, who was examined as a witness in his behalf, whilst, as to the wound in the wrist, the same physician says, "very superficial wound in the wrist * * * merely a flesh wound.

"Q.—Would a wound like that interfere with its use?" (i. e. the use of the wrist).

"A—No, I don't think it would; it would for the first two or three days, but after that it would not interfere at all.

"Q.—Did you or not consider the wound of Mr. Solanas serious?"
"A.—No, sir."

The tendency of the plaintiff to magnify his injuries is further illustrated by the fact that, although he is shown to be a young man, (having been about twenty-five years of age when the shooting took place), and although his wounds consisted of a scratch on the shoulder, and a superficial flesh wound in the wrist, he fell to the ground, and believing, or pretending to believe, that he was unable to walk, prevailed on two negro men to carry him to his home, in their arms. His disposition to exaggerate the loss and damage sustained is equally manifest. He says that he was laid up for nine days in bed; that he lost his place and was unable to work or to find employment for four months; that his doctor's bill was $23 or $26; that the value of the time lost by him was $250, and that he estimates his bill for drugs and for extra care at $50 or $60. We find no reason whatever for his having gone to bed on account of his wounds, and still less for his staying there for nine days, nor can we understand why his drug bills and the extra care and attention should be estimated at $50 or $60. Conceding that the wound in the wrist might have produced some soreness, and might have made it inconvenient for him to do the work of a stenographer, or a typewriter, for a few days, or even weeks, the pretense that he was incapacitated for four months is insufficiently supported by evidence, and it is untrue that he lost his place, in which he was receiving $65 per month, on account of his wound. The physician gives some negative testimony to the effect that his bill, (which does not appear to have been paid), might have been $23.00, and. to that extent corroborates the testimony of the plaintiff. It also appears that the plaintiff lost some little time, and suffered some slight inconvenience; and, upon this basis, if there was nothing more to be said, he would be entitled to recover actual damages, to which something would be added by way of punishment to the defendant and of warning to others. But the whole story has not been told. It appears from the record that the plaintiff was the paramour of the

defendant for several years, under circumstances which might well have justified her in believing that he would marry her, but that, instead of doing so, he induced her minor daughter, seventeen years of age, who was living in the house with her mother, to elope with, and marry him, and that the defendant was so wrought up by the situation in which she found herself that she attempted her own life by shooting herself through the breast, near the heart, as a consequence of which, she was confined in the hospital for several weeks. It further appears that, after his marriage with defendant's daughter, the plaintiff fell into a desperate strait concerning a certain sum of money, for lack of which he was threatening suicide; and that, by means of such threats, to which were added supplications, the defendant was induced to go to his relief and furnish the required sum; but that, when, needing the money herself, she demanded its return, it was not forthcoming, and she was obliged to bring a suit for its recovery; that she obtained judgment against the plaintiff in the City Court, but was unable to realize on it, and that eventually, upon the advice of his counsel, the plaintiff authorized a proposition to be made for the payment of said judgment in monthly instalments. The defendant claims that, pending negotiations upon that subject, and, in connection therewith, she was charged by her counsel with the delivery of a letter to the plaintiff, and that she was waiting to deliver it, but that the plaintiff had been in the habit of passing her house and smiling satirically, and jeering at her, and that when he appeared with a smile of that description on his face she was driven to frenzy, and, rushing to her wash-stand, took her pistol from the drawer, and shot him instead of delivering the letter.

That the defendant had been driven to frenzy, it is easy to believe, and although she may have become quieter as time wore on, it can readily be understood that the pendency of the litigation referred to was calculated to revive her excitement and fan it into blaze at any moment. Under such circumstances, any damages which might be recoverable against her would, in any event, be mitigated to attenuation by the vile misconduct of the plaintiff operating so largely as the contributing cause. But the whole story has not yet been told. There is evidence going to show that during the year 1899, months after the institution of this suit, the plaintiff, on more than one occasion, visited the house of the defendant, at night, and was permitted by her to resume, temporarily, his former relations, and that he expressed contrition for what had been done, and assured her that this suit would be dismissed. This astounding development is supported by the testimony of the defend-

ant, whilst there is some denial of the facts by the plaintiff. But the testimony of the defendant is corroborated in important particulars by that of another witness, a cousin of the plaintiff, who was not even cross-examined and who is not impeached in any way. We can see no reason, therefore, for not accepting the defendant's statement as the truth.

Under these circumstances, and whilst it further appears from the evidence in the record, that the defendant was prosecuted criminally for the assault upon the plaintiff and was convicted and pardoned, we are of opinion that as to any civil claim for damages the plaintiff must be held to have condoned the offence by his subsequent conduct, and hence, that the demand herein set up was properly rejected. The judgment appealed from is therefore affirmed.

Rehearing refused.